# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DOROTHEA McCLINTON,**

        **Plaintiff,**

**v.**                                                **Case No. 07-C-465**

**ASSURANT, INC.,**

        **Defendant.**

# DECISION AND ORDER

Dorothea McClinton ("McClinton") brought this action against Assurant, Inc. ("Assurant"), in which she alleges that Assurant violated the Employee Retirement Income Security Act of 1974 ("ERISA") by denying her disability benefits. Assurant moved for summary judgment, which the Court will grant for the following reasons.

## BACKGROUND

McClinton was employed by Assurant as a job change processor that primarily entailed entering data into a computer. (R. 362.) Beginning on February 28, 2006, McClinton did not report to work due to swelling and constant pain in her hands and feet. She claimed that the swelling and pain were due to lupus.

1

As an employee of Assurant, McClinton was a participant of the Assurant Disability Plan ("the Plan"). The Plan has three components: (1) Salary Continuation; (2) short term disability ("STD"); and (3) long term disability ("LTD").[1] Assurant delegated to Reed Group "the sole discretionary authority" to determine eligibility for benefits under the Salary Continuation and STD components of the Plan. (R. 515.) Likewise the claims administrator of LTD, Assurant Employee Benefits, had "sole discretionary authority" to determine eligibility for benefits under the LTD portion of the Plan. (*Id*.)

McClinton submitted a request for disability benefits to the Reed Group for the time she was not at work. The Plan stated that McClinton did not have to provide any paperwork, but she did have to authorize her doctor to release her health information:

> Whenever possible, Reed will obtain all the required data to approve your disability over the telephone; no paperwork will be required . . . You must authorize your doctor to release any individual health information to the Reed Group and its authorized representatives for the purpose of certifying your disability, and request that they have your chart available during the call.
>
> (R. 502.)

On April 6, 2006, the Reed Group contacted McClinton's physician, Dr. John Fahey, and asked him for the following information:

1. What are the primary and secondary diagnoses and ICD-9 codes?

---

[1] Salary Continuation benefits are payable for a maximum period of 12 weeks and begin when a Plan participant has been disabled for seven consecutive days and remains disabled at the end of those seven days. STD benefits begin on a Plan participant's 92nd day of continuous disability and are payable for a maximum period of 13 weeks. LTD benefits begin on the 183rd day of continuous disability or on the day after the last day of STD benefits and is payable until the normal retirement age of the participant. (R. 500, 503, 506.)

2

>   2. Present condition and symptoms.
>   3. Objective findings.
>   4. Treatment, including dates of visits, next appointment date, medications, all procedures.
>   5. Progress, i.e., recovered, improved, and unchanged, worse.
>   6. Current disability and prognosis, including estimated return-to-work date.
>   7. Activity restrictions and accommodations required for patient to return to work.

(R. 354.)

On April 10, 2008, the Reed Group wrote McClinton a letter stating that it was unable to make a determination on her request for disability benefits because "[t]he Report of Attending Physician and/or other reports of medical documentation are not available for review by Reed Group." (R. 355.) Two days later, on April 12, 2006, McClinton submitted an authorization for release of health information that permitted the Reed Group to request her medical information. (R. 356.)

On April 24, 2006, Dr. Fahey submitted the Attending Physician's Statement that the Reed Group provided. (R. 357). The Attending Physician's Statement is a one page form that included some of the information that the Reed Group requested in its letter of April 4, 2006. Dr. Fahey reported that he diagnosed McClinton with lupus, had prescribed various pain medications, and that he estimated she would be able to return to work by May 10, 2006.

In a letter dated May 5, 2006, the Reed Group denied McClinton's request for disability benefits. (R. 358.) The Reed Group explained that "[t]he information provided to us by you and/or your physician provides insufficient clinical data to allow us to make a

3

determination." (*Id*.) The letter also provided a toll free number for her to call if she had any further questions. (*Id*.)

On June 13, 2006, McClinton appealed the Reed Group's determination. (R. 386.) She wrote a letter to initiate her appeal in which she explained the pain and swelling she experienced in her hands, and she said she "enclosed . . copies of recent test results and physician information." (*Id*.) However, it is unclear which "copies of recent test results" to which McClinton was referring because the only document included in the record is a one page letter from Dr. Fahey. (R. 359.) In Dr. Fahey's letter, he explained that McClinton is still suffering from "very active aggressive lupus," and is "hoping to return to work in two months." (*Id*.) He listed the medications he prescribed her and also stated "[h]er test results were reviewed." (R. 359.) There is nothing in the record indicating the nature of these "test results."

On August 2, 2006, the Reed Group affirmed the denial of McClinton's disability benefit application. (R. 360.) It stated in a letter that the only documents it reviewed were a "letter from [McClinton] to appeal the denial," and a "letter dated June 13, 2006 from Dr. John Fahey." (*Id*.) No documentation was submitted, according to the Reed Group, "address[ing] the functional capacity of [McClinton]." (*Id*.)

On September 5, 2006, McClinton submitted another appeal letter in which she described the pain and swelling in her hands. (R. 364.) On October 24, 2006, the Reed Group affirmed the denial again. (R. 365.) In its denial letter, the Reed Group informed

4

McClinton that the only documents it had to review were the Attending Physician's Statement dated April 24, 2006, and a letter from Dr. Fahey dated June 13, 2006. The Reed Group explained that while these reports from Dr. Fahey confirmed McClinton's symptoms of pain and swelling in her hands, they did not "speak to [McClinton's] functional status." (*Id*.) The letter also informed McClinton that she could appeal the decision to the Assurant Benefit Plans Committee (the "Benefits Committee"), so long as she submitted her appeal within 60 days. (*Id*.)

McClinton subsequently sought the assistance of an attorney. Her attorney, on December 22, 2006, sent the Reed Group a letter requesting a 90-day extension to file McClinton's appeal. (R. 368.) The Benefits Committee responded by granting an additional 60 days from December 23, 2006, to file the appeal. (R. 372.) Accordingly, the new deadline for filing an appeal was February 21, 2007.

On January 3, 2007, McClinton's attorney requested "every document upon which Reed Group relied to deny" McClinton's disability claim, including copies of the Summary Plan Document and Plan Document. (R. 374.) In response, the Reed Group provided: (1) the Summary Plan Document; (2) the Plan Document; (3) Dr. Fahey's Attending Physician Statement; and (4) Dr. Fahey's letter dated June 13, 2006. (Plaintiff's Proposed Finding of Fact ("PPFOF") ¶ 23.)

Despite the February 21, 2007 deadline, McClinton's attorney did not submit an appeal until April 25, 2007, 63 days after the extended deadline expired. (R. 377-78.)

5

Accordingly, the Benefits Committee informed her attorney in a letter dated May 3, 2007, that it would not review McClinton's appeal because it was untimely filed. (*Id*.) On May 22, 2007, McClinton filed a complaint initiating the present action.

**DISCUSSION**

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore, the parties agree that the Court must review Assurant's denial of McClinton's claim under the arbitrary and capricious standard. The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Trombetta v. Cragin Fed. Bank of Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). The Court may only overturn the administrator's decision if it is "downright unreasonable." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (quoting *Butler v. Encyclopedia Brittanica, Inc.,* 41 F.3d 285, 288 (7th Cir. 1994)).

The Reed Group denied McClinton's claim because there was "insufficient clinical data" and no evidence addressing her "functional capacity." McClinton argues that the Reed Group never requested this information, and as such, her claim should not be denied on the ground that she failed to provide information that the Reed Group never requested. However, the Reed Group specifically asked Dr. Fahey for "objective findings," which he

6

never provided. While both Dr. Fahey and McClinton referred to certain "test results," there are no test results in the record. In addition, Dr. Fahey left blank on the Attending Physician's Statement the place to "list any restrictions" and the place to list the dates of treatment. Accordingly, Dr. Fahey did not provide all of the information that the Reed Group requested, and as such, the Reed Group's finding that there was insufficient, objective evidence of her functional limitations was a non-arbitrary conclusion. *See Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 324-25 (7th Cir. 2007) ("Dr. Burton's statement that Williams had failed to provide evidence of his functional limitations was a non-arbitrary explanation for his conclusion.")

McClinton also argues that the Benefits Committee wrongly denied her appeal as untimely because when her attorney asked for documents "upon which the Reed Group relied" for its decision, the Benefits Committee withheld certain documents relevant to her claim, including an internal memo regarding her case and the Absence Report timeline. Specifically, McClinton cites 29 C.F.R. § 2560.503-1, which requires that the administrator provide the claimant "upon request" any "information relevant to the claimant's claim." 29 C.F.R. § 2560.503-1(h)(3)(iii). While the documents withheld by the Benefits Committee were certainly relevant to McClinton's claim, her attorney never requested all "relevant" documents. He only requested those documents "upon which the Reed Group relied." The only documents upon which the Reed Group relied were the two documents that Dr. Fahey provided, and which the Benefits Committee gave to McClinton's lawyer. Consequently,

7

the Benefits Committee's decision to not review McClinton's appeal as untimely, especially in light of the fact that it granted her a 60-day extension to file the appeal, certainly was not an arbitrary and capricious decision. *See Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005) ("internal appeal limitations in ERISA plans are to be followed just as ordinary statutes of limitations.")[2]

Finally, McClinton argues that the same person was involved in denying her claim and all of her appeals – Karen Burgoyne ("Burgoyne"). While Burgoyne was the "case manager" of McClinton's claim, the record indicates that Karen Jubrey, a registered nurse, authorized the denial of McClinton's first level appeal. In addition, Elaine Busta made the decision on her second level appeal. Accordingly, McClinton failed to show that the same person made the decision on more than one level of review.

Because the Reed Group's and the Benefit Committee's decisions to deny McClinton disability benefits were not "downright unreasonable," the Court must grant Assurant's motion for summary judgment.

---

[2] McClinton argues that the Reed Group also relied upon the Medical Disability Advisor ("MDA") Guidelines, which the Reed Group did not provide to McClinton. However, the MDA is only referenced in an internal memo – it was not the basis for the final decision. The actual denial letters only reference the insufficient information that McClinton provided, and in the case of the Benefits Committee, her attorney's failure to timely file her appeal. In other words, the Reed Group and the Benefits Committee never found that McClinton could materially perform her work duties; they only found that there was insufficient evidence to make a finding one way or the other on that claim. The MDA, therefore, was not something upon which the Reed Group and the Benefits Committee relied, and as such, was not something that they were required to provide McClinton upon her attorney's request.

8

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Assurant's Motion for Summary Judgment (Docket No. 14) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 19th day of June, 2008.

**BY THE COURT**

 /s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**